

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **Case No. CR 01-334 GAF** |
| ) | |
| ) | |
| Plaintiff, ) | **ORDER RE: SELF RECUSAL** |
| ) | |
| v. ) | |
| ) | |
| CASH BONAS, ) | |
| ) | |
| ) | |
| Defendant. ) | |

20    In the present case, defendant Cash Bonas is charged with using the

21    internet to communicate threats to opposing counsel in connection with a

22    civil antitrust case. During the course of the present prosecution,

23    questions arose regarding defendant's competency.  Defendant was

24    examined at the Metropolitan Detention Center, where he was found to be

25    suffering from a mental disorder that rendered him incompetent to stand

26    trial. Thereafter, the Court ordered defendant transported to the Federal

27    Medical Center at Butner, North Carolina, for further examination and

28    restoration of competency.  After several months, the Court received a



1  report prepared by Dr. Ralph Newman and Edward E. Landis, Director of

2  Psychology Training, in which they conclude:

3        In answer to the Court's question, it is the opinion of these

4        evaluators that Mr. Bonas remains not competent to stand trial

5        as the result of Delusional Disorder and that there is not a

6        substantial probability that his competency will be restored in

7        the foreseeable furutre in order to permit the trial to proceed.

8  They then go on to state:

9        We do not view Mr. Bonas as dangerous to others or the

10       property of others pursuant to Title 18, United States Code,

11       Section 4246.  He has no history of physical violence towards

12       others or the property of others.  Despite writing potentially

13       threatening comments in his letters, he has never acted on

14       these threats.  He claims that when he has written that he

15       was going to kill someone, he was actually referring to what

16       he would do to them legally in a court setting.

17  Defendant was then returned to Los Angeles for further proceedings.

18       The matter was set on calendar for a status conference after the

19  government requested, over vigorous defense objection, a further

20  examination and a hearing on the issue of whether defendant should be

21  released or held in custody pursuant to Section 4246.  The Court granted

22  the request, noting that the report prepared at FMC-Butner, at least on the

23  issue of defendant's dangerousness, appeared superficial and without a

24  substantial foundation.  Among other things, the Court noted that the

25  observation regarding the meaning of defendant's threats failed to explain

26  away the threats defendant made to the Court.

27       Based on that observation, it is now clear that the Court is at least a

28  potential witness regarding defendant's behavior, and is in possession of

1    information and has made comments that might cause a reasonable

2    person, with knowledge of all the facts, to question the Court's

3    impartiality.  On this subject, the Ninth Circuit has stated:

4        "Under section 455(a), the judge is under a continuing duty to

5        ask himself what a reasonable person, knowing all the relevant

6        facts, would think about his impartiality." United States v.

7        Hines, 696 F.2d 722, 728 (10th Cir.1982) (citing Roberts v.

8        Bailar, 625 F.2d 125, 129 (6th Cir.1980)). On the other hand,

9        a judge has as much obligation not to recuse himself where

10       there is no reason to do so as he does to recuse himself when

11       the converse is true. City of Cleveland v. Cleveland Elec.

12       Illuminating Co., 503 F.Supp. 368, 370 (N.D.Ohio 1980).  In

13       United States v. Cooley, 1 F.3d 985, 993-94 (10th Cir.1993),

14       this court noted that threats or attempts to intimidate a judge

15       will not ordinarily satisfy the requirements for disqualification

16       under section 455(a). Here, however, we are faced with a

17       situation where a trial judge learned of an alleged conspiracy

18       to assassinate him from the FBI, and the judge was told that

19       the defendant he was about to sentence was involved in the

20       conspiracy. Under section 455(a)'s objective standard, we

21       must decide whether the judge's impartiality might reasonably

22       have been questioned in this particular case.

23          The court concludes that under these unique

24       circumstances, the trial judge should have recused himself

25       from sentencing Greenspan. The judge learned of the alleged

26       threat from the FBI, and there is nothing in the record to

27       suggest the threat was a ruse by the defendant in an effort to

28       obtain a different judge. At oral argument, the government

1       conceded that a reasonable person might have questioned the

2       judge's impartiality in light of the judge's knowledge that an

3       investigation was being conducted into alleged threats against

4       him by the defendant. In a case like the present, where there

5       is no inference that the threat was some kind of ploy, the

6       judge should have recused himself pursuant to section 455(a)

7       and allowed another judge to sentence Greenspan.

8    United States v. Greenspan, 26 F.3d 1001, 1005-06 (9th Cir. 1994).

9       Given the circumstances of this case, it cannot be said that

10   defendant made his threats as a means of disqualifying the Court from

11   hearing the pending motion. Defendant simply had no way of knowing, at

12   that time, that this motion would be made. Thus, the concern articulated

13   in Greenspan – the use of threats as a means of intimidating the judge – is

14   not present. Rather, under Greenspan's analysis, because there is no

15   inference that the threat was some kind of ploy, the Court should self-

16   recuse pursuant to section 455(a). Moreover, under present

17   circumstances where the trial judge is a potential witness in a proceeding

18   that could result in defendant's indefinite incarceration, recusal seems all

19   the more important to avoid even the appearance of impropriety.

20      Accordingly, the Court reluctantly concludes that this matter – the

21   hearing on the government's motion under 18 U.S.C. § 4246 – should be

22   returned to the Clerk for random reassignment.

23

24      IT IS SO ORDERED.

25

26   DATED:  May 8, 2002

27
                                    _____
28                                  Judge Gary Allen Feess
                                    United States District Court

4